## **AFFIDAVIT**

1.      Affiant, Joseph R. Behlke, a Special Agent with the Drug Enforcement Agency (DEA) being duly sworn, does hereby depose and states:

Affiant, Joseph R. Behlke, is a Special Agent ("SA") with the DEA and has served in that capacity since graduating from the basic agent training program at the DEA Academy in Quantico, Virginia in 2009.  Affiants' first duty location as a SA was on the United States-Mexico border in McAllen, Texas for approximately six years.  Affiant is currently assigned to the DEA Cleveland District Office.  As such, Affiant is an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code,  Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code,  Section 2516(1).

## **TRAINING AND EXPERIENCE**

2.      Prior to serving as an SA with the DEA, Affiant served as a Cuyahoga County Ohio Adult Probation Officer for approximately six years.  In this role, Affiant conducted background checks and interviews with subjects to prepare Pre-Sentence Investigative Reports for the Court.  In addition, Affiant prepared Expungement Reports for the Court.  Lastly, Affiant supervised subjects on Electronic Home Monitoring while they were on Probation.

3.      As a federal law enforcement officer, Affiant has participated in and conducted investigations involving narcotics activities and activities involving other illicit, non-narcotic controlled substances.  These investigations have resulted in arrests of individuals who have manufactured, smuggled, received, and distributed controlled substances, including heroin, methamphetamine, cocaine, and marijuana, as well as the seizure of controlled substances and

the proceeds of the sale of those controlled substances.  In addition, Affiant has conducted investigations concerning the concealment of narcotics and other proceeds, including assets, monies, bank records, and the identification of co-conspirators through the use of drug ledgers, phone records, bills, photographs, and financial records.

4.      Affiant has participated in investigations involving the interception of wire communications, body recordings, and video surveillance.  Affiant has also participated in and executed numerous search and seizure warrants authorizing the search of locations of drug traffickers, their co-conspirators and vehicles used to transport controlled substances.  Materials searched for and recovered in these locations have included controlled substances, packaging materials, scales, cutting agents, weapons, documents, papers, electronic files and media reflecting the identity of co-conspirators, receipts for concealed investments, and proceeds derived from the distribution of controlled substances.  During these investigations, Affiant also has participated in interviewing witnesses and cooperating sources regarding illegal trafficking in controlled substances and has read official reports of similar interviews by other officers.

5.      Affiant is familiar with the methods with which drug traffickers conduct their business, including, but not limited to, their methods of importing, and distributing controlled substances, their use of mobile telephones, computers and other electronic devices, their use of businesses, houses, and other facilities in which controlled substances are stored and meetings are conducted, and their use of numeric codes and code words to conduct their narcotics transactions.  Your affiant is also familiar with drug traffickers' use of communications devices, and texting applications and programs on such devices to conduct their business, including, but not limited to, transmitting information regarding price, quantity, and transportation of

2

controlled substances.

6.      Affiant is aware that the illicit operating of Drug Trafficking Organizations (DTOs) depends upon maintaining extensive contacts throughout the country and internationally.  Specifically, individuals involved in drug trafficking must maintain contact with drug suppliers, drug couriers, drug customers, and others involved in the supply, transportation, distribution, sales, and marketing of controlled substances.  It is essential that members of DTOs maintain contact with one another and use expedient means of communication.  To do this, continued access to telephone communication, including text messaging communication, is necessary.  The use of telephone and text messaging communication is essential in maintaining timely long-distance and local contacts with the original suppliers and those down the organizational chain, to include local traffickers.  Your affiant is aware that those involved in illegal drug operations often list their telephones and cellular telephones in the names of others or purchase pre-paid cellular telephones that do not require any proof of identification, in order to conceal their identities and illegal purposes.  It is likewise essential that such organized groups meet to formulate plans concerning narcotics or other illegal activities and to divide their illegal proceeds. Through training and experience, your Affiant knows that members of a DTO utilize cellular telephones, to include the push-to-talk, direct connect features, and text messaging, in order to arrange such meetings.

7.      Affiant has been involved in numerous drug-related investigations, drafting and executing search warrants, and wire and electronic interceptions, to include, but not limited to, text messages, and supervising the activities of confidential informants who have provided information concerning the activities of drug traffickers and other criminals.  Your affiant

knows that persons involved in the criminal activity, particularly the distribution of controlled substances, frequently attempt to conceal their identities, the locations at which the illicit transactions occur, and the laundering of proceeds from the illicit activity to "plain" currency. Your affiant is also aware that drug traffickers routinely carry and utilize two or more telephones to compartmentalize the associates with whom they communicate; separating customers, counterparts, and suppliers.

8.      Affiant is aware that individuals engaged in drug trafficking activity maintain telephone contact with persons with whom they are involved in various forms of illegal activity, including drug suppliers, partners, and customers and others involved in the distribution of controlled substances. The use of telephones, including cellular telephones, is essential in maintaining timely communication with selected associates of a drug trafficker, and the use of multiple cellular phones allows a trafficker to maintain telephone accounts which are designated for persons with whom the trafficker wishes to communicate less frequently and more confidentially.  Maintaining separate lines of communication with closer associates allows traffickers to distribute those telephone numbers to a far fewer number of collaborators, making that number less susceptible to law enforcement scrutiny.

9.      Based upon Affiant's training and participation in other criminal drug-related investigations involving large amounts of controlled dangerous substances, Affiant knows:

a.      That drug traffickers must maintain on hand large amounts of U.S. Currency in order to finance their on-going narcotic business and often keep this currency in their possession.

4

b.  That drug traffickers maintain books, records, receipts, notes, ledgers, and similar items of their drug trafficking activity where the drug traffickers have ready access to them.

c.  That persons involved in drug trafficking conceal illegal controlled substances, large amounts of currency, financial instruments, jewelry, and other items of value and/or proceeds of drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in narcotics trafficking activities.

d.  That drug traffickers commonly maintain addresses or telephone numbers in books or papers, which reflect names, addresses and/or telephone numbers for their associates in the drug trafficking organization.

e.  That persons involved in drug trafficking conceal in their residences ("stash houses"), large amounts of currency, financial instruments, precious metals and gems, jewelry, and other items of value and/or proceeds of drug transactions; and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money derived from engaging in narcotics trafficking activities.

f.  That persons involved in drug trafficking often segregate their drug operations by storing large amounts of currency, financial instruments, precious metals and gems, jewelry, and other items of value and/or proceeds of drug transactions; and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money derived from engaging in narcotics trafficking

5

activities in detached garages and sheds.  Often, this is done in the event law enforcement conducts a search warrant on the immediate living area, no evidence will be found.  Also, it is done that in the event another drug trafficker attempts to rob them, their drug trafficking activities will be separated from the living area.

g.      That when drug traffickers amass large amounts of proceeds from the sale of drugs, they attempt to legitimize these profits through money laundering activities.

h.      That drug traffickers commonly have in their possession at their residences and/or their businesses, firearms, including but not be limited to: handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons.  Said firearms are used to protect and secure a drug trafficker's property.

i.      That drug traffickers often maintain records linking them to their trafficking and that these records may include records of narcotic sales, debts, shipments, which may be contained in electronic organizers, pagers, cellular telephones, computers [hard drives], CD-ROMS, telephone books which identify customers and/or co-conspirators, and photographs of co-conspirators.  Even if off-site locations are used to store records, some evidence such as safety deposit keys, records, and receipts and/or documents regarding mini-warehouses, mail and answering services, etc., will be present.

6

## PROBABLE CAUSE FOR ARREST

On June 26, 2018, United States Magistrate Judge Thomas M. Parker signed a document warrant for 253 Samuel Street, Elyria, Ohio. On June 27, 2018, at approximately 6:53 am, the search warrant was executed at 253 Samuel Street, Elyria, Ohio, by the Elyria Police Department SWAT Team. At that time, Michael BODIFORD, the person living in the home, was inside the residence and he was detained. After the residence was secured, law enforcement conducted a search of the residence. During the search, a .9 mm handgun was located under the couch in the living room. As soon as BODIFORD observed that law enforcement found the gun, BODIFORD made an unsolicited statement that the gun was not his and "you got to protect your family." BODIFORD was the only person inside the residence. BODIFORD is a convicted felon, and has a conviction for aggravated trafficking in drugs from 1992 in the State of Ohio.

On June 26, 2018, United States Magistrate Judge Thomas M. Parker signed a document warrant for 859 Sherwood Avenue, Elyria, Ohio. On June 27, 2018, at approximately 7:27 am, the Lorain County Sheriff Department SWAT Team executed the search warrant and secured the residence. At that time, Dontae FROST was inside the residence and he was detained. FROST, FROST's girlfriend, and two juveniles were at the residence. After the residence was secured, law enforcement conducted a search. During the search, a clear plastic cup and clear plastic tray was located in the kitchen cabinet containing an unknown residue. FROST gave law enforcement written consent to search the home for narcotics, and provided law enforcement with a clear plastic bag that he stated contained cocaine that was in a pair of shorts next to his bed. Additionally located in the residence was an undetermined amount of United States Currency in the basement, brown paper bag that contained a green leafy substance in a clear plastic bag in his

7

bedroom, two clear plastic cups with suspected residue in the basement, clear baggie containing

a spoon and fork with unknown residue in the basement, and blue digital scale and rolling papers

found in his bedroom.

_____

Joseph R. Behlke
Special Agent
Drug Enforcement Administration

Sworn to via telephone after
submission by *reliable electronic*
means. Crim.Rules. 4.1; 41(d)(3)

Thomas M. Parker

United States Magistrate Judge

**1:37 PM, Jun 27, 2018**

8